IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KIMBERLY FREEMAN,

    Plaintiff,

v.

JOANNE B BARNHART,

    Defendant.

No. C 06-04900 JSW

**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court are the cross-motions for summary judgment filed by defendant Michael J. Astrue, Commissioner, Social Security Administration ("Defendant") and plaintiff Kimberly Freeman ("Plaintiff"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby grants in part and denies in part Defendant's motion for summary judgment and grants in part and denies in part Plaintiff's cross-motion for summary judgment.[1]

**BACKGROUND**

Plaintiff brings this employment discrimination action against her former employer, the Social Security Administration. Plaintiff was appointed as a service representative intern in September 2003 for a two-year period through the Federal Career Intern Program ("FCIP").

---

[1] The Court HEREBY DENIES Plaintiff's motion to strike the declaration of Steve Korn. The Court HEREBY SUSTAINS Defendant's evidentiary objections to the Deposition of Linda Moore ("Moore Depo.") at 36:21-38:23 and 42:23-44:15 and the Declaration of Noel Riggins at 31:7-32:22 and OVERRULES Defendant's evidentiary objections to the Moore Depo. at 49:1-4 and 50:22-25. The Court cannot rule on the objections to the Moore Depo. at 41:22-24 because Plaintiff did not file this page of the deposition. The Court need not rule on the remainder of Defendant's evidentiary objections because the Court did not need to consider such evidence in order to resolve the parties' motions for summary judgment.

1  FCIP interns have the possibility that they may be offered permanent positions at the end of
2  their internships. (Declaration of Claire T. Cormier ("Cormier Decl."), Ex. A-5.) Although two
3  other interns were hired at approximately the same time as Plaintiff, one quit shortly after
4  beginning training. (Cormier Decl., Ex. B (Deposition of Paula Singer ("Singer Depo.") at
5  26:6-12), Ex. D (Deposition of Victoria Currey ("Currey Depo.") at 16:4-16).) The other intern,
6  Teresa Galan ("Galan"), is still employed by Defendant. (Cormier Decl., Ex. B (Singer Depo.
7  at 26:18-19).)

8  Defendant provided Plaintiff with approximately four to five months of training.
9  (Cormier Decl., Ex. A (Deposition of Kimberly Evette Freeman ("Freeman Depo.") at 29:22-
10 30:16).) The classroom portion of her training took place at an office managed by David
11 Corneliuz. (Cormier Decl., Ex. A (Freeman Depo. at 33:4-13), Ex. E (Deposition of David R.
12 Corneliuz ("Corneliuz Depo.") at 10:8-17).) Victoria Currey ("Currey") was Plaintiff's
13 supervisor at the Fresno District Office. Bobbie Summers ("Summers") was Currey's
14 supervisor, and Paula Singer ("Singer") supervised Summers. (Cormier Decl., Ex. C
15 (Deposition of Bobbie Summers ("Summers Depo.") at 102:24-103:4, Ex. D (Currey Depo. at
16 21:9-11, 45:20-46:7).)

17 Plaintiff received a mid-term evaluation. (Cormier Decl., Ex. A-6.) The evaluation
18 contained both negative and positive feedback. (*Id*.) Plaintiff was evaluated as making
19 adequate progress in all of the areas noted. The positive comments included that Plaintiff had a
20 positive attitude, exhibited a particular ability and eagerness to deal with the public, had a
21 strong knowledge of the enumeration procedures, conducted her interviews in a professional
22 manner, learned quickly, demonstrated good organizational skills, and worked hard. (*Id*.)
23 However, the evaluation also included comments that Plaintiff needed to limit the amount of
24 time spent socializing and found it hard to stay focused on her paperwork. (*Id*.) The mid-term
25 evaluation was dated January 13, 2004. (*Id*.)

26 On July 9, 2004, Defendant terminated Plaintiff's appointment, effective July 24, 2004,
27 before the two-year appointment had expired. (Cormier Decl., Ex. A-7.) The stated reason for
28

the termination was Plaintiff's "inability to remain focused and productive while at work, along with [her] inability to control [her] workload due to excessive socializing while on duty." (*Id.*)

Plaintiff brings the following claims against Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*: (1) "unlawful discrimination and harassment/hostile work environment based on race/color" and (2) "unlawful discrimination based on retaliation." (Compl., ¶¶ 35-41, 43-49.) The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

**ANALYSIS**

**A.  Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence that negates an essential element of the non-moving party's claims, or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

3

1   Once the moving party meets his or her initial burden, the non-moving party must go beyond
2   the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine
3   issue for trial." Fed. R. Civ. P. 56(e).

4   In order to make this showing, the non-moving party must "identify with reasonable
5   particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
6   1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact
7   must be sure to point a court to the evidence precluding summary judgment because a court is
8   "'not required to comb the record to find some reason to deny a motion for summary
9   judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir.
10  2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th
11  Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment,
12  the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

13  **B.    Defendant's Motion for Summary Judgment.**

14  **1.    Plaintiff's Unlawful Discrimination Claim.**

15  Title VII provides that, "[i]t shall be an unlawful employment practice for an employer
16  to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any
17  individual with respect to his compensation, terms, conditions, or privileges of employment,
18  because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). In
19  general, disparate treatment claims are evaluated under the *McDonnell Douglas*[2] framework, in
20  which "the burden of production first falls on the plaintiff to make a prima facie case of
21  discrimination." *Coghlan v. American Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005). If
22  the plaintiff establishes a prima facie case, the burden then shifts to the defendant to present
23  evidence "sufficient to permit the factfinder to conclude that the employer had a legitimate
24  nondiscriminatory reason for the adverse employment action." *Id.* (citing *St Mary's Honor
25  Center v. Hicks*, 509 U.S. 502, 506-07 (1993)). If the employer meets its burden, "the
26  *McDonnell Douglas* framework drops out of the picture entirely, and the plaintiff bears the full
27  burden of persuading the factfinder that the employer intentionally discriminated against him."

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4

*Id.* That is, the plaintiff bears the burden of showing that the employer's reason for the adverse employment action was pretextual. *See, e.g., Vasquez v. County of Los Angeles,* 349 F.3d 634, 640 (9th Cir. 2004).

To establish a prima facie case of discrimination, Plaintiff must show that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with similar qualifications to her own were treated more favorably. *See Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir.2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)). Defendant argues that the other FCIP intern, Galan, was not similarly situated to Plaintiff because Galan did not have the same problems as Plaintiff. However, Plaintiff submits evidence to show that Galan mistakenly sent out a large check and was not disciplined. (Declaration of Mary Dryovage ("Dryovage Decl."), Ex. G (Deposition of Victoria Currey ("Curry Depo.") at 127:23-129:9.) Based on the lenient standard, the Court finds that Plaintiff presents sufficient to establish a prima facie case.

Defendant proffers a legitimate non-discriminatory reason for terminating Plaintiff. According to Defendant, Plaintiff was terminated because she socialized too much and did not follow instructions. However, Plaintiff submits sufficient evidence to create a question of fact as to whether Defendant's reason was pretextual. A plaintiff may "show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641.

Although "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact," *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir.1996), Plaintiff does not rely solely on her own subjective personal judgments. She submits evidence that other co-workers, including her mentor, believed Plaintiff was performing her job well. (Dryovage Decl., Exs. C-2, L.) Taking the facts and the reasonable inferences

5

1 therefrom in the light most favorable to Plaintiff, the Court concludes that Plaintiff has met her
2 burden to show there are genuine issues of material fact in dispute about whether she was
3 terminated because of her race and, thus, denies Defendant's motion for summary judgment on
4 this claim.

### 2. Plaintiff's Hostile Work Environment Claim.

Defendant also moves for summary judgment on Plaintiff's hostile work environment claim. An employer may violate Title VII when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the employee's conditions of employment and create an abusive working environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In order to prevail, Plaintiff must demonstrate that she was subjected to verbal or physical conduct of a harassing nature that was sufficiently severe or pervasive so as to alter the conditions of her employment. Simple or occasional teasing will not be considered conduct so extreme as to amount to a change in the terms and conditions of employment. *See Faragher*, 524 U.S. at 786-88.

Plaintiff testified that before she received the termination notice, she thought everything was going fine with her job. (Cormier Decl., Ex A. (Freeman Depo. at 64:14-17.) Up until the day she was terminated, Plaintiff thought that she got along with Currey and everyone else in the office, and that Currey had treated her with respect. (*Id*. at 59:1-21.) The conduct she contends Summers engaged in that created a hostile work environment was terminating her without providing her with union representation or giving her an opportunity to improve. (*Id*. at 63:16-64:13.) Plaintiff also contends that Singer told her not to talk to the "negative people in the corner," who Plaintiff understood to mean the African-Americans who sat in a corner, except for Plaintiff's mentor. (*Id*. at 50:10-52:13.) Currey also told Plaintiff that Singer did not want her talking to the people in the corner, except for Plaintiff's mentor. (*Id*. at 39:18-42:12, 55:21-56:11.) Plaintiff believed that Singer glared at her a couple of times when she saw her talking to one of the African-Americans, other than her mentor, who sat in the corner. (*Id*. at 52:14-53:10.) Plaintiff's evidence is insufficient to demonstrate that Plaintiff was subjected to

1  verbal or physical conduct of a harassing nature that was sufficiently severe or pervasive so as
2  to alter the conditions of her employment. *See Faragher*, 524 U.S. at 786-88.

3  Plaintiff also references allegedly harassing or discriminatory conduct directed at other
4  African-American employees, mostly during time periods when Plaintiff was not even
5  employed by Defendant. However, such evidence, even if admissible, does not show that
6  *Plaintiff* was subjected to harassing or discriminatory conduct. Notably, Plaintiff does not
7  submit any evidence demonstrating that she was even aware of the alleged conduct that was
8  directed at the other African-American employees. Therefore, such evidence is not probative of
9  whether *Plaintiff* suffered from a hostile work environment. Accordingly, the Court grants
10 summary judgment on Plaintiff's claim to the extent it is premised on her being subjected to a
11 hostile work environment.

### 3. Plaintiff's Reprisal or Retaliation Claim.

13 Defendant moves for summary judgment on Plaintiff's retaliation claim, arguing that
14 Plaintiff did not engage in any protected activity. Plaintiff counters that Defendant
15 misconstrues her claim. She is not claiming retaliation based on her own filing of a prior
16 complaint, but raises an issue of "reprisal" for associating with other African-American
17 employees who filed EEO complaints. (Opp. at 19.) It is not clear how use of the term
18 "reprisal" versus "retaliation" changes the nature of her claim. According to the allegations of
19 her complaint, Plaintiff alleges that she was terminated in reaction to her associating with other
20 African-American employees who filed EEO complaint. (Compl., ¶¶ 44-46.)

21 The Ninth Circuit has not yet addressed the issue of whether an employee who is
22 retaliated against based on another employee's protected activities may bring a claim under
23 Title VII. There is a split of authority regarding whether being related to or associated with
24 another person who engages in protected activity is sufficient to satisfy the first prong of a
25 prima facie case of retaliation.[3] A majority of courts, including the three circuit courts that have

---

[3] To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in a protected activity under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Porter v. California Dept. of Corrections,* 419 F.3d 885, 894 (9th Cir.

7

United States District Court
For the Northern District of California

examined this issue, have concluded such claims are not cognizable; only employees that have personally engaged in statutorily protected activity may bring retaliation claims. *See Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 568 (3rd Cir.2002); *Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1226 (5th Cir.1996); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir.1998); *Thompson v. North Amer. Stainless, LP*, 435 F. Supp. 2d 633, 638-39 (E.D. Ky 2006); *Singh v. Green Thumb Landscaping, Inc.*, 390 F. Supp. 2d 1129, 1138 (M.D. Fla. 2005); *Higgins v. TJX Co., Inc.*, 328 F. Supp. 2d 122, 124 (D. Me. 2004); *U.S. EEOC v. Bojangles Restaurants, Inc.*, 284 F. Supp. 2d 320 (M.D.N.C. 2003); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 241 F. Supp. 2d 1123, 1144 (D. Kan. 2002); *Bates v. Clark Cnty*, 2006 WL 3308214, *3-4 (D. Nev. Nov. 13, 2006); *Mutts v. Southern Connecticut State University*, 2006 WL 1806179, *10-11 (D. Conn. June 28, 2006); *but see Gonzalez v. N.Y State Dep't, Corr. Serv.*, 122 F. Supp. 2d 335, 346-47 (N.D.N.Y. 2000); *EEOC v. Nalbandian Sales, Inc.*, 36 F. Supp. 2d 1206, 1210-11 (E.D. Cal. 1998); *Murphy v. Cadilac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1118 (W.D.N.Y. 1996); *De Medina v. Reinhardt*, 444 F. Supp. 563, 580 (D.D.C. 1978).

Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. The plain language of the statute limits retaliation claims to those who opposed an unlawful practice or personally made a charge or "testified, assisted, or participated in any manner" in protected activity. *See Fogleman*, 283 F.3d at 568 (construing similar language under Americans with Disabilities Act and Age Discrimination in Employment Act); *see also Smith*, 151 F.3d at 819; *Thompson*, 435 F. Supp. 2d. at 638; *Singh*, 390 F. Supp. 2d at 1137-38; *but see Nalbandian Sales*, 36 F. Supp. 2d at 1209 (finding the statutory language ambiguous). Some courts have noted that this language is contrary to the policies underlying the statute. *See Fogleman*, 283 F.3d at 568-9; *Horizon Holdings*, 241 F. Supp. 2d at 1143. As the court in *Fogleman* noted:

---

2005).

8

> [t]here can be no doubt that an employer who retaliates against the friends and relatives of employees who initiate anti-discrimination proceedings will deter employees from exercising their protected rights. ... Allowing employers to retaliate via friends and family, therefore, would appear to be in significant tension with the overall purpose of the anti-retaliation provisions, which are intended to promote the reporting, investigation, and correction of discrimination in the workplace.

*Id*., 283 F.3d at 569.

Generally, a conflict between a statute's plain meaning and its policy objectives is resolved in favor of the statute's plain meaning. *See Fogleman*, 283 F.3d at 569 (*citing Caminetti v. United States*, 242 U.S. 470, 485 (1917). While there are cases in which blind adherence to the literal meaning of the statute would lead to patently absurd results, and, thus, following the letter, rather than the spirit of the law would go against the court's role in construing statutes to effectuate the legislature's intent, such is not the case here. *See Fogleman*, 283 F.3d at 569; *see also Smith*, 151 F.3d at 819 (finding that allowing third-party retaliation claims is not necessary to protect third parties from retaliation because the statute already offers broad protection to such individuals by prohibiting retaliation against employees who assist or participate in any manner in a proceeding under Title VII); *Bojangles Restaurants, Inc.*, 284 F. Supp. 2d at 326-27 ("To read Title VII as [plaintiffs] do would be more than interpreting an ambiguous passage in a statute. It would actually add language to what Congress has written ..."). As the court discussed in *Fogleman*, Congress could have had intended to limit the anti-retaliation provisions to those who actually participated in some manner in protected activity:

> Congress may have thought that in most cases, the relatives and friends who are at risk for retaliation will have participated *in some manner* in a co-worker's charge of discrimination... . If this is true, then the occurrence of pure third-party retaliation will be rare, so that no allowing claims to proceed in these few instances would not necessarily defeat the plain purpose of the anti-discrimination laws. ...
> Moreover, Congress may have feared that expanding the class of potential anti-discrimination plaintiffs beyond those who have engaged in protected activity to include anyone whose friends or relatives have engaged in protected activity would open the door to frivolous lawsuits... .

*Id*. at 569-70 (internal quotes and citation omitted) (emphasis in original). Moreover, as one court has suggested, to the extent employers do attempt to chill protected activity by

9

1  persecuting a complainant's associates, the complainant may be able to bring a claim directly
2  for retaliation based on such conduct. *Mutts*, 2006 WL 1806179, *11.

3  The Court finds that section 2000e-3 of Title VII is not ambiguous, and thus the Court
4  concurs with the courts that have concluded that retaliation claims under anti-discrimination
5  statutes such as Title VII do not encompass claims by third parties who have not participated in
6  some manner in the protected activity.  Moreover, to the extent the Court could be persuaded, in
7  exceptional circumstances, that construing the statute to exclude third-party retaliation claims
8  would be contrary to the legislative intent and lead to absurd results, Plaintiff's case does not
9  present such exceptional circumstances.  In fact, the courts which have extended the scope of
10 retaliation claims to include relatives or associates of claimants have only done so in close
11 family relationships, such as spouses or siblings. *See Gonzalez*, 122 F. Supp. 2d at 346-47;
12 *Nalbandian Sales*, 36 F. Supp. 2d at 1210-11; *Murphy*, 946 F. Supp. at 1118; *De Medina*, 444 F.
13 Supp. at 580.  Here, Plaintiff is not related, even distantly, to the employees who filed
14 complaints.  Moreover, she does not even appear to be close friends with the claimants.  She
15 testified that she spent no more time associating with the claimants than other employees did.
16 (Cormier Decl., Ex. A (Freeman Depo. at 62:2-63:15).)  Accordingly, the Court grants summary
17 judgment on Plaintiff's claim that she was terminated in reaction to her association with other
18 employees who filed EEO complaints.

19 **C.    Plaintiff's Motion for Summary Judgment.**

20 Plaintiff moves for summary judgment on Defendant's following affirmative defenses:
21 exhaustion of administrative remedies, untimely exhaustion of administrative remedies, statute
22 of limitations, failure to take preventative or corrective opportunities, no similarly situated
23 employees, ratification or consent to mistreatment, waiver, unreasonable delay, and mitigation.

24 Defendant does not oppose Plaintiff's motion as to the affirmative defenses of
25 exhaustion of administrative remedies and untimely exhaustion of administrative remedies.
26 Accordingly, the Court grants Plaintiff's motion as to these two defenses.  The Court will
27 address the remaining defenses in turn.

### 1. Statute of Limitations.

The Social Security Administration issued its Final Agency Decision on May 10, 2006, but Plaintiff did not file her complaint in this action until August 14, 2006, ninety-six days later. Pursuant to 29 C.F.R. § 1614.407, Plaintiff was required to file her complaint in this Court within 90 days of her receipt of the final agency action. However, in response to the Court's Order to Show Cause, Plaintiff submitted a declaration from her counsel, Mary Dryovage, stating that she did not receive the Final Agency Decision until May 17, 2006. (Declaration of Counsel, ¶ 3.) The Court HEREBY DISCHARGES the Order to Show Cause. Defendant did not submit any evidence regarding when Plaintiff received the Final Agency Decision, and thus has not demonstrated that there are any genuine issues of material fact in dispute on this issue. Accordingly, the Court grants Plaintiff's motion as to this affirmative defense.

### 2. Failure to Take Advantage of Preventative or Corrective Opportunities, Ratification or Consent, and Waiver.

Defendant only contests Plaintiff's motion as to the affirmative defenses of failure to take preventative or corrective measures, ratification or consent, and waiver the extent that Plaintiff alleges any claims other than the one relating to her termination. Because the Court is granting Defendant's motion to the extent Plaintiff brings a hostile work environment claim, her claim that she was terminated based on her race is Plaintiff's only remaining claim. Therefore, the Court grants Plaintiff's motion as to these affirmative defenses.

### 3. No Similarly Situated Employees.

Plaintiff argues that Defendant admitted that Galan and Plaintiff were similarly situated. However, Plaintiff's request for admission merely asked Defendant to admit that Galan was "comparable" to Plaintiff. (Declaration of Mary Dryovage, Ex. R.) Moreover, Defendant submits evidence sufficient to establish a factual dispute regarding whether Galan and Plaintiff were similarly situated. (Cormier Decl, Ex. D (Currey Depo. at 35:19-36:15, 66:11-68:20, 70:15-22).) Accordingly, the Court denies Plaintiff's motion as to this affirmative defense.

11

**4.     Unreasonable Delay.**

Defendant argues that Plaintiff unreasonably delayed in filing this lawsuit because she did not file it until ninety-six days after the Final Agency Decision was issued. However, as noted above, Plaintiff filed her complaint in this action with ninety days of her *receipt* of the Final Agency Decision, which is what the applicable regulation requires. *See* 29 C.F.R. § 1614.407. Defendant also points out that Plaintiff did not serve Defendant until November 2, 2006. (Docket No. 8.) Plaintiff served Defendant within less than three months, which is well within the six-month time period set forth in Federal Rule of Civil Procedure 4(m). Therefore, the Court finds that Defendant has not demonstrated the existence of a genuine issue of material fact and, thus, grants summary judgment on this affirmative defense.

**5.     Mitigation.**

In opposition to Plaintiff's motion, Defendant points out that Plaintiff took a two-week period off in between her jobs since working at the Social Security Administration. (Supplemental Declaration of Claire T. Cormier, Ex A (Freeeman Depo. at 20:4-23:13).) This evidence is sufficient to establish a factual dispute regarding Plaintiff's effort to mitigate damages. Therefore, the Court denies Plaintiff's motion for summary judgment as to this affirmative defense.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the parties' cross-motions for summary judgment as follows:

(1)    The Court DENIES Defendant's motion as to Plaintiff's claim that she was terminated because of her race;

(2)    The Court GRANTS Defendant's motion to the extent Plaintiff brings a claim for hostile work environment and as to Plaintiff's reprisal or retaliation claim;

(3)    The Court GRANTS Plaintiff's motion as to Defendant's affirmative defenses of exhaustion of administrative remedies, untimely exhaustion of administrative remedies, statute of limitations, failure to take preventative or corrective opportunities, ratification or consent, waiver, and unreasonable delay; and

12

(4) The Court DENIES Plaintiff's motion as to as to Defendant's affirmative defenses of no similarly situated employees and mitigation.

**IT IS SO ORDERED.**

Dated: March 18, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE